UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JOHN D. LEVITAN, SR.,

                         Plaintiff,

           – against –

GILEAD SCIENCES, INC., GILEAD
SCIENCES IRELAND UC, PATTERSON
BELKNAP WEBB & TYLER LLP,
GEOFFREY POTTER, TIMOTHY ALAN
WATERS, ARON FISCHER, JOSHUA STEIN,
AND THOMAS P. KURLAND,

                   Defendants.

-------------------------------------------------------------- X

**MEMORANDUM AND ORDER**

25-CV-393 (AMD) (JAM)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action alleging violations of the Florida Constitution and common law defamation claims. The plaintiff asserts these claims against Gilead Sciences, Inc. and Gilead Sciences Ireland UC ("Gilead"), a pharmaceutical company that has sued the plaintiff in this Court for conspiring to sell counterfeit Gilead medication, and Patterson Belknap Webb & Tyler LLP and lawyers at the firm ("PBWT"), who represent Gilead in that related suit. The plaintiff initiated this case in Florida state court, the defendants removed it to the Northern District of Florida, and that court transferred it here pursuant to 28 U.S.C. § 1404.

Before the Court are two motions: the plaintiff's motion either to transfer the case back to the Northern District of Florida for that court to reconsider its decision denying the plaintiff's motion to remand based on an intervening change in law or to remand directly, and the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the plaintiff's motion to transfer the case back to the Northern District of Florida is denied. However, the Court does not have subject matter jurisdiction over the

plaintiff's claims, so the case is remanded to the Florida state court, where the case was filed originally.  The Court does not have jurisdiction to decide the defendants' motion to dismiss.

## BACKGROUND[1]

### I.    Factual Background

In the summer of 2021, Gilead, represented by PBWT, sued various defendants for conspiring to distribute counterfeit Gilead-branded HIV medicine.  (*Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.) ("*Gilead*"), ECF No. 1.)  As the case developed, Gilead identified other members of the alleged conspiracy, including the plaintiff in this action, John Levitan, and amended the complaint to include them as defendants and add allegations about their roles in the scheme.  (*See, e.g.*, *id.* ECF No. 607 (the plaintiffs' motion to amend the complaint to add Levitan, among others); *id.* ECF No. 630 (Fourth Amended Complaint, naming Levitan as a defendant).)

On August 11, 2022, pursuant to 15 U.S.C. § 1116(d), the Court entered an asset freeze order, a temporary restraining order, and a seizure order against the plaintiff, as well as other named defendants in *Gilead*.  (*See id.* ECF Nos. 627, 628, 629.)  About a week later, PBWT executed the seizure order at the plaintiff's home in Pensacola, Florida.  (*See id.* ECF Nos. 687, 748, 823; *see* ECF No. 26 ¶¶ 17–21.)

The plaintiff's claims arise out of the defendants' allegations in the fourth amended complaint in *Gilead* and the defendants' execution of the seizure order.  (*See* ECF No. 30, Transfer Order, at 9–23.)  In his amended complaint, the plaintiff asserts Florida state law claims.  He maintains that some of the allegations in the defendants' complaint were defamatory

---

[1] The history of this case is long and contentious.  The Court assumes familiarity with the related case *Gilead Sciences Inc., et al. v. Safe Chain Solutions LLC, et al.*, No. 21-CV-4106 (E.D.N.Y.), and discusses only the facts necessary to reach its decision.

and violated the plaintiff's rights to free speech and association under Article I, §§ 4 and 5 of the Florida Constitution.  (ECF No. 26 ¶¶ 15, 27–29, 36–42; *id.* at 9–10; ECF No. 26-1 at 1–7; *Gilead*, ECF No. 630 ¶¶ 270–76.)  The plaintiff further alleges that the execution of the seizure order was an unlawful search that violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution.  (ECF No. 26 ¶¶ 17–26, 30–35.)

## II.    Procedural Background

The parties have been litigating against each other in this Court for three years.  (*See, e.g.*, *Gilead*, ECF Nos. 839, 1150, 1169, 1452–55, 1472–74; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by then-Magistrate Judge Bulsara*; *Gilead*, *ECF Order dated Oct. 12, 2023 entered by Magistrate Judge Marutollo*.)

On September 2, 2024, the plaintiff filed this action in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.  (ECF No. 1-1.)[2]  In his initial complaint, the plaintiff asserted the state law claims described above, as well as violations of the First and Fourth Amendments.  (*Id.* ¶¶ 25–27.)  The plaintiff also alleged that the "damages subject of this action exceeds $50,000.00."  (*Id.* ¶ 12.)  On October 3, 2024, the defendants removed the case to the Northern District of Florida, arguing that the court had diversity and federal question jurisdiction.  (ECF No. 1.)  The defendants maintained that the court had diversity jurisdiction because the parties were completely diverse and the amount in controversy "as pled[,] plausibly exceeds $75,000."  (*Id.* ¶¶ 5–16.)  The defendants also claimed that the court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint alleged federal

---

[2] Citations to ECF are to the docket in this action.  Citations to "N.D. Fl. ECF" are to the docket in *Levitan v. Patterson, Belknapp, Webb & Tyler, LLP, et. al*, No. 24-CV-475 (N.D. Fl.).

constitutional violation and that the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (*Id.* ¶¶ 17–18.)

The defendants then moved to transfer the action to this court pursuant to 28 U.S.C. § 1404(a) and to stay the proceedings in the Northern District of Florida. (ECF No. 3.) They also asked that court to extend the deadline to respond to the complaint until it resolved their motion to transfer. (ECF No. 4.) The court extended the defendants' deadline to respond to the complaint until 10 days after the resolution of the motion to transfer. (ECF No. 5.)[3]

On October 21, the plaintiff moved to remand the case to Florida state court. (ECF No. 7.) He argued that removal was improper because the amount in controversy did not meet the jurisdictional threshold for diversity jurisdiction and that his claims did not present a federal question. (*Id.* at 5–7.) The defendants opposed. (ECF No. 18.)

On November 12, 2024, and while the transfer motion was pending, Magistrate Judge Zachary C. Bolitho of the Northern District of Florida issued a report and recommendation recommending that the district judge deny the motion to remand. (ECF No. 21.) Observing that the plaintiff "clearly cites to the U.S. Constitution for several of his claims," the court held that remand was unwarranted because the court had federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 3–4.) In addition, the court noted that "[b]ecause there is clearly federal question jurisdiction in this case, it is unnecessary to address whether diversity jurisdiction exists." (*Id.* at

---

[3] Gilead was served on October 14, 2024, after PBWT removed the case to federal court. (ECF No. 17 at 1–2.) Gilead appeared in the case, consented to removal (ECF No. 15), and joined PBWT's motion to transfer (ECF No. 16). Gilead also asked for the same extension of the deadline to respond to the complaint (ECF No. 17 at 2–3), which the court granted (ECF No. 19).

2 n.1.)  Neither party objected to the report and recommendation, and the district court adopted it on December 31, 2024.  (ECF No. 28.)

Although the plaintiff did not object to the magistrate judge's recommendation, he filed an amended complaint on November 15, 2024.  (ECF No. 26.)  The factual allegations in the amended complaint were almost identical to the original complaint.  This time, however, the plaintiff removed the federal constitutional claims and added language that purports to cap his damages at $70,000.  (*Compare* ECF No. 1-1 ¶¶ 25–27, 31, 34, 37 (alleging violations of the First and Fourth Amendments) *with* ECF No. 26 ¶¶ 25–27, 31, 34, 37 (alleging the same conduct without citing the federal constitution); *compare* ECF No. 1-1 ¶ 12, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000.00") *with* ECF No. 26 ¶ 11, Prayer for Relief (alleging the "damages subject of this action exceeds $50,000 but is no greater than $70,000").)  The defendants objected, calling the amended complaint "a naked and legally impermissible effort to plead this case out of federal court."  (ECF No. 27 at 10.)[4]  They maintained that there was still federal question jurisdiction because the plaintiff's claims "still directly raise and require resolution of issues of federal law under both the United States Constitution and the Lanham Act."  (*Id.* at 12.)  In the alternative, they maintained that the court had diversity jurisdiction, notwithstanding the plaintiff's "attempt to plead an amount in controversy below $75,000."  (*Id.* at 14.)

On January 6, 2025, Judge Bolitho issued a thorough and well-reasoned opinion granting the defendants' motion to transfer the action to this Court.  (ECF No. 30.)  The court found that the "case could have been filed in the Eastern District of New York because it has subject matter

---

[4] The defendants do not argue that the amended complaint was procedurally improper under Federal Rule of Civil Procedure 15.

jurisdiction, personal jurisdiction, and is a proper venue for this action." (*Id.* at 5.) The court further explained that "[b]ecause the Court has already determined that subject matter jurisdiction existed at the time of removal, Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case." (*Id.* at 6.) The court observed that "[f]ederal courts have repeatedly rejected . . . clever attempts to destroy federal jurisdiction" by amending a pleading. (*Id.* at 6; *see also id.* at 6 n.2 (citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002).)

The court also analyzed the factors that guide Eleventh Circuit courts in determining whether to transfer a case under § 1404(a). (*Id.* at 9–23.) The court concluded that "[e]ach factor identified by the Eleventh Circuit either weighs in favor of transfer or is neutral." (*Id.* at 23.) Accordingly, the court "exercise[d] its broad discretion" and transferred the case to this Court. (*Id.*) Judge Bolitho directed the clerk of his court to transfer the case 15 days after the date of the order "unless the Clerk receives an objection from the Plaintiff prior to the expiration of the fifteen-day deadline." (*Id.*) The plaintiff did not file an objection to the transfer order by January 21, 2025, and the case was transferred to this Court on January 23, 2025. (ECF No. 35.)[5]

On January 27, 2025 — after the case had been transferred and assigned a case number in this Court, after the defendants appeared, and after Magistrate Judge Joseph Marutollo issued a scheduling order — the plaintiff filed objections to Judge Bolitho's transfer order in the Northern District of Florida. (N.D. Fl. ECF No. 37.)[6] The plaintiff argued that the court should reconsider

---

[5] The Clerk of Court for the Northern District of Florida transferred the case prematurely on January 8, 2025. (*See* ECF Nos. 32–34.) The Clerk of this Court then "removed [the transferred case] from CM/ECF in the Eastern District of New York." In any event, the case was ultimately transferred to this Court on January 23, 2025 — two days after Judge Bolitho's deadline for the plaintiff to object to the order. (ECF No. 35.)

[6] The plaintiff called this filing a motion for reconsideration.

the transfer order in light of the Supreme Court's intervening decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), issued on January 15, 2025.  (*Id.* at 1–6.)  The plaintiff also filed a letter in which he explained that his objections were late because "the winter storm emergency" that affected wide swaths of the southern United States prevented him from filing his papers in person.  (N.D. Fl. ECF No. 38 at 1.)[7]  The plaintiff further noted that he had twice requested — and was twice denied — electronic filing privileges, and that he had emailed his objections to the defendants on January 21, 2025.  (*Id.* at 1 n.1, 3–5.)

The defendants opposed the motion, arguing that the plaintiff "provide[s] no basis for [the Northern District of Florida] [to] undo the transfer of this case to the Eastern District of New York ('EDNY'), which already timely occurred on January 23, 2025."  (N.D. Fl. ECF No. 39 at 2.)  According to the defendants, the plaintiff did not "challenge any aspect of the Court's reasons for granting transfer pursuant to 28 U.S.C. § 1404(a)," and raised "entirely jurisdictional" objections.  (*Id.*)  On January 29, 2025, Judge M. Casey Rodgers of the Northern District of Florida held that she was divested of jurisdiction on January 23rd, when the case was transferred to this Court, and therefore could not consider whether the plaintiff's "objections should be allowed out of time or the underlying merits of his objections."  (N.D. Fl. ECF No. 40 at 1–2.)

---

[7] Florida Governor Ron DeSantis declared a state of emergency in the state on January 20, 2025.  *See* Fla. Exec. Order No. 25-13 (Jan. 20, 2025).  The Court could not find any Northern District of Florida announcements about courthouse closures during this time, although the bankruptcy court in that district closed the Clerk's office in the Pensacola courthouse on January 21 and 22, 2025 because of the storm, and noted that unrepresented parties could file documents by email.  *See Tallahassee and Pensacola Clerk's Offices Closing for Inclement Weather*, United States Bankruptcy Court Northern District of Florida (Jan. 20, 2025), https://www.flnb.uscourts.gov/news/tallahassee-and-pensacola-clerk%E2%80%99s-offices-closing-inclement-weather.

On January 31, 2025, the defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in this Court.  (ECF No. 42.)[8]  In a flurry of filings on February 13 and 14, 2025, the plaintiff moved to supplement the record from the Northern District of Florida to include his January 27th objections and his letter explaining the reasons for the delayed filing.  (ECF No. 46.)  He asked this Court to reconsider, pursuant to Federal Rule of Civil Procedure 59(e), the order denying remand and the transfer order, in light of *Royal Canin*.  (ECF No. 47.)  He also moved to remand the case (ECF No. 49), asked the Clerk enter default judgement against all defendants for failing to answer or respond to the amended complaint (ECF No. 50), and moved to strike the defendants motion to dismiss either as untimely or on the merits (ECF No. 51).  The defendants opposed the plaintiff's motion to remand the case to state court, reconsider the Florida court's order, or to transfer it back to Florida federal court.  (ECF No. 53).  They also filed reply in further support of their motion to dismiss and opposing the plaintiff's motion to strike.  (ECF No. 54.)[9]

## DISCUSSION

The plaintiff asks the Court to remand his case to Florida state court.  (ECF No. 47 at 1, 4; ECF No. 49.)  He suggests some procedural avenues to accomplish this goal.  First, he asks this Court to transfer the case back to the Northern District of Florida for that court to reconsider its order denying the plaintiff's motion to remand.  In the alternative, he asks this Court to reconsider Judge Bolitho's order denying remand or to remand the case itself.  (ECF No. 47 at 4, 7; ECF No. 49 at 2.)

---

[8] The defendants also moved to stay discovery until the Court resolved the motion to dismiss.  (ECF No. 43.)  Judge Marutollo granted the stay on March 3, 2025.  (*ECF Order dated Mar. 3, 2025 entered by Magistrate Judge Marutollo*.)

[9] The plaintiff's motion to supplement the record is denied as moot.  The Court takes judicial notice of these filings and considers them in deciding the motions.  *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

## I.  Motion to Transfer

"Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts."  *Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *5 (E.D.N.Y. July 30, 2016) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  That "doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case."  *Id.* at *4 (quoting *Sagendorf-Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)).  The Second Circuit has not "directly endorsed a standard by which district court judges should exercise their discretion in revisiting the decisions of a transferor courts."  *Id.*  *See also SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 178 n.7 (2d Cir. 2000) ("A district court considering a retransfer motion might be limited by 'law of the case' principles, at least in the absence of changed circumstances.").  Moreover, it is well-settled that "courts should be loathe to revisit prior decisions of a coordinate court unless there are extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  *Torres v. Universal Music Grp. N.V.*, No. 24-CV-5323, 2024 WL 3429444, at *1 (S.D.N.Y. July 16, 2024) (quoting *Wade Park Land Holdings, LLC v. Kalikow*, 2023 WL 2614243, at *7 (S.D.N.Y. Mar. 23, 2023)).  "[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."  *Hatteras Enters. Inc.*, 2016 WL 4083386, at *5 (quoting *SongByrd, Inc.*, 206 F.3d at 178 n.7).

The Court sees no reason to transfer the case back to the Northern District of Florida.  Judge Bolitho committed no error in his determination that this case was related to *Gilead* under the relevant § 1404(a) factors and the controlling case law.  (ECF No. 30 at 9–23.)  Even if the

Court had disagreed with the Judge Bolitho's analysis, the policy reasons that favor application of the law of the case doctrine would persuade the Court that retransfer is inappropriate in this case. *See, e.g.*, *U.S. Bank N.A. v. Bank of Am. N.A.*, 916 F.3d 143, 153 (2d Cir. 2019) (affirming district court holding that a coordinate court's transfer order was law of the case where there was "no clear error in that ruling").

More fundamentally, and as detailed below, "[s]ince this court lacks subject matter jurisdiction over the instant matter, no order transferring the case may be issued." *Leeds, Morelli & Brown, P.C. v. Hernandez*, 2005 WL 2148994, at *3 (E.D.N.Y. Sept. 6, 2005) (collecting cases). Indeed, the Court's conclusion that it lacks subject matter jurisdiction further confirms that transferring the case back to the Northern District of Florida would risk a "perpetual game of jurisdictional ping-pong," *U.S. Bank N.A.*, 916 F.3d at 152 (quoting *Christianson*, 486 U.S. at 816), which is particularly unnecessary given that this Court is "equally capable of hearing and deciding" questions of federal court jurisdiction, *Pace v. Quintanilla*, No. 13-CV-91, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013).

Accordingly, the plaintiff's motion to transfer is denied.

## II.    Motion to Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If a statute confers federal jurisdiction over a suit, not only the plaintiff but also the defendant can get it into federal court," by removing the case pursuant to §§ 1441(a) and 1446. *Royal Canin*, 604 U.S. at 27.

After a defendant removes a case, a plaintiff may move to remand it back to state court. 28 U.S.C. § 1447(c). "If the federal court lacks subject-matter jurisdiction, it must grant the motion to remand." *Mohadeb v. Credit Corp Sols. Inc.*, No. 22-CV-5017, 2022 WL 17832856, at *1 (E.D.N.Y. Dec. 21, 2022). "The removing defendant has the burden of establishing federal jurisdiction." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

In addition, the Court must always confirm its own jurisdiction over a removed action. *See United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Regardless of whether a plaintiff moves to remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Whether styled as a motion to reconsider or a motion to remand, the plaintiff claims that the Supreme Court's opinion in *Royal Canin* requires remand because the district court does not have subject matter jurisdiction. (*See, e.g.*, ECF No. 47 at 2–5.)[10] The plaintiff argues that *Royal Canin* permits him to amend the complaint to remove federal questions so that the federal court does not have subject matter jurisdiction; then, the plaintiff says, the Court must remand the case. (*Id.*) The defendants respond that *Royal Canin* does not apply because the Court has

---

[10] The Supreme Court decided *Royal Canin* after Judge Bolitho denied the plaintiff's motion to remand to the state court. For this reason, the Court declines to treat the Judge Bolitho's decision as the law of the case. *See, e.g.*, Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.4 (3d ed.) ("Following a § 1404(a) transfer, the receiving court should treat pre-transfer rulings by the transferring court in much the same way as one district judge treats the rulings of a colleague."). Moreover, "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *2 (E.D.N.Y. Oct. 26, 2022) (citation omitted); *see also Christianson*, 486 U.S. at 817 ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

federal question jurisdiction over the amended complaint.  (ECF No. 53 at 6–11.)  The defendants also maintains that the Court has diversity jurisdiction.  (*Id.* 11–13.)

    a.    ***Royal Canin***

In *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25–26 (2025), decided earlier this year, the Supreme Court held that when a plaintiff "amends her complaint to delete all the federal-law claims, leaving nothing but state-law claims behind," the federal court no longer has jurisdiction over the case, which must "return to state court."  In her first complaint, Wullschleger claimed that Royal Canin's marketing tricked her into buying expensive dog food. *Id.* at 28.  She asserted claims under the Missouri Merchandising Practices Act and state antitrust law.  *Id.*  As part of these claims, she alleged that Royal Canin violated a federal statute.  *Id.* Accordingly, although the complaint asserted no federal claims, it raised an embedded a federal question.  *Id.* at 28 n.1 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).  Royal Canin removed the case to federal court, invoking the court's federal question jurisdiction and supplemental jurisdiction.  *Id.* at 28–29.  Wullschleger moved to remand, which the court denied.  *Id.* at 28 n.1. Then, she amended her complaint, deleting any mention of the federal statute, and moved to remand again.  *Id.* at 29.  The district court denied that motion, too.  The Eighth Circuit reversed, reasoning that the amended complaint "[supersedes] an original complaint and renders the original complaint without legal effect."  *Id.* (alteration in original) (quoting *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 922 (8th Cir. 2023)).

The Supreme Court unanimously agreed.  The Court held that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says."  *Id.* at 30.  Put another way, "[t]he reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's

jurisdiction." *Id.* at 35–36. If "[t]he operative pleading no longer supports federal jurisdiction," then "the federal court must remand the case to the state court where it started." *Id.* at 39. Once a "plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Id.* at 30. Accordingly, the Supreme Court held, the district court lacked jurisdiction over the purely state-law claims in the operative complaint — that is, the amended complaint — and was required to remand the case. *Id.* at 38.

The Court rejected Royal Canin's claim that "[t]he amendment of a complaint following removal of a suit to federal court cannot divest that court of supplemental jurisdiction." *Id.* at 32. To the contrary, the Supreme Court stated, "changes in parties, or changes in claims, effectively remake the suit," including "its jurisdictional basis." *Id.* at 35. Justice Kagan, writing for the Court, explained that "result accords with Congress's usual view of how amended pleadings can affect jurisdiction." *Id.* at 34. The Court observed, for example, that "an amendment can either destroy or create jurisdiction in an original diversity case," as "add[ing] a non-diverse party in such a case typically destroys diversity jurisdiction, requiring the case's dismissal." *Id.* at 37 (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374–377 (1978)).

The Court did, however, note one category of amendments that is exempt from this rule: amendments that change "factual issue[s] relevant to jurisdiction." *Id.* at 37 n.8. Within this category is "an amendment reducing the alleged amount-in-controversy to below the statutory threshold," which "will usually not destroy diversity jurisdiction." *Id.* Because "the rule more concerns a fact on the ground," in this case "the value of a suit," it is "analogous to the time-of-filing rule applying to citizenship." *Id.* (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294–295 (1938)); *Rosado v. Wyman*, 397 U.S. 397, 405, n. 6 (1970)); *see also id.* at 36 n.5 (distinguishing the "so-called time-of-filing rule," "which evaluates a party's

citizenship (*e.g.,* whether the defendant is in fact from New York) at the time a suit is brought," and "concerns only the actual 'state of things' relevant to jurisdiction"). Accordingly, the Court suggested the amount in controversy should still be calculated as of the time a plaintiff files the original complaint.

> **b.    The Northern District of Florida's Decision on Subject Matter Jurisdiction**

On November 12, 2024, Judge Bolitho recommended that the district judge deny the plaintiff's motion to remand. (ECF No. 21.) At that time, the operative complaint was the original complaint, which included the explicit references to the First and Fourth Amendments. Judge Bolitho held that there was federal question jurisdiction because the plaintiff "clearly cites to the U.S. Constitution for several of his claims." (*Id.* at 3.) Judge Bolitho found that it was unnecessary to address whether there was diversity jurisdiction exists "[b]ecause there is clearly federal question jurisdiction in this case." (*Id.* at 2 n.1.)

Shortly thereafter, the plaintiff amended his complaint, "deleting every mention of federal law," just as the *Royal Canin* plaintiff did. (ECF No. 26; *Royal Canin*, 604 U.S. at 22 (Syllabus).) The defendants' motion to transfer was still pending when the plaintiff filed his amended complaint.

Judge Bolitho granted the defendants' transfer motion on January 6, 2025, a week before the Supreme Court published *Royal Canin*. In deciding that motion — and specifically whether the case "could have been filed in the Eastern District of New York because it has subject matter jurisdiction" — the court considered whether the plaintiff's amendment affected its jurisdiction. (ECF No. 30 at 5.)

Following then-binding circuit precedent, which was unquestionably good law before *Royal Canin*, Judge Bolitho wrote:

> The Court has already determined that federal subject matter jurisdiction existed in this case at the time of removal. (Docs. 21, 28). Plaintiff, however, recently attempted to circumvent the Court's jurisdictional determination by filing an amended complaint that removes references to any federal claims and expressly seeks damages less than the $75,000 amount-in-controversy requirement. (*See* Doc. 26). Federal courts have repeatedly rejected such clever attempts to destroy federal jurisdiction. Because the Court has already determined that subject matter jurisdiction existed at the time of removal (Docs. 21, 28), Plaintiff's amended complaint does not deprive the Court of subject matter jurisdiction in this case.

(*Id.*)

Judge Bolitho relied on three cases: *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095–96 (11th Cir. 2002), which "affirm[ed] the denial of remand where plaintiff 'amended the complaint to remove any federal cause of action' because the facts alleged in the amended complaint still 'fell within the scope of the federal causes of action' initially pleaded" (alteration adopted); *Collura v. City of Philadelphia*, 590 F. App'x 180, 184 (3d Cir. 2014), which "affirm[ed] denial of remand where plaintiff 'dropped his federal claims from his amended complaint' because 'federal jurisdiction cannot be defeated by amending a complaint to eliminate federal claims after removal'" (alteration adopted); and *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007), in which the Supreme Court observed in a footnote that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction . . . . But removal cases raise forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction through amendment."  (*Id.* at 5 n.2, 6 (emphasis in original).)

The *Royal Canin* Court addressed these cases, and noted that there was a circuit split on the question before the Court.  *Collura* and *Behlen* were in circuits where the rule was "that a post-removal amendment cannot divest a federal court of jurisdiction."  *Royal Canin*, 604 U.S. at

30, & n.3 (citing *Collura*, 590 F. App'x at 184, and *Behlen*, 311 F.3d at 1095).  *Royal Canin* clearly abrogated these holdings.  *See Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024) (Supreme Court decision abrogates circuit precedent if there is "a conflict, incompatibility, or inconsistency" between the decision and precedent (internal citation omitted)).

Justice Kagan also discussed *Rockwell* at length, explaining that it was consistent with the Court's reasoning in Royal Canin: "unless the withdrawn allegations [in an amended complaint] were 'replaced by others' giving the court adjudicatory power, the plaintiff's amendment 'will defeat jurisdiction.'"  *Id.* at 36 (quoting *Rockwell*, 549 U.S. at 473); *see also id.* at 41 (*Rockwell* "examine[d] what happens in an original case when a plaintiff amends a complaint to expunge federal claims").

The Court also distinguished the footnote on which Judge Bolitho relied in the transfer order.  Acknowledging that "[t]he footnote . . . sets out exactly the rule [the defendant] wants" — and the rule Judge Bolitho stated — the Court said that "the footnote is dictum, and [did] not control the outcome" in *Royal Canin*.  *Id.* at 42.  The Court did not have to "follow the *Rockwell* footnote just because it exists; [the Court's] adherence instead depends on whether it withstands analysis.  And it does not."  *Id.* at 43.

*Royal Canin*, thus, abrogated the central precedents on which Judge Bolitho relied in holding that this Court would have had federal jurisdiction over the case had it been brought in this district.  Accordingly, the Court must evaluate whether it has subject matter jurisdiction over this case in light of *Royal Canin*.  *See id.* at 34 ("[A]n amendment can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion.").

c.    **Federal Question Jurisdiction**

The plaintiff maintains that *Royal Canin* controls this case.  Because the plaintiff

removed his references to federal law in the amended, now-operative complaint, he contends that

the Court does not have federal question jurisdiction over the purely state-law claims in the

amended complaint.  (*See generally* ECF No. 47.)  The defendants say that *Royal Canin* does not

apply because the plaintiff amended his complaint "to *retain* the claims that gave rise to federal

jurisdiction in the first instance while also trying to wordsmith them to make them sound like

something else."  (ECF No. 53 at 8 (emphasis in original).)  Second, they assert that the state law

claims in the amended complaint nonetheless arise under federal law because they "necessarily

raise a stated federal issue, actually disputed and substantial, which a federal forum may

entertain without disturbing any congressionally approved balance of federal and state judicial

responsibilities."  (*Id.* at 10 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545

U.S. 308, 314 (2005).)  Neither argument is persuasive.

"The federal district courts have 'original jurisdiction' of civil actions 'arising under'

federal law; and unless otherwise provided by Congress, they have removal jurisdiction over

'any civil action brought in a State court of which the district courts of the United States have

original jurisdiction.'"  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d

308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)).  Claims directly arise under

"federal law when federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S.

251, 257 (2013).

As an initial matter, the defendants' argument that this case is distinguishable from *Royal*

*Canin* because the plaintiff removed federal claims, not just references to federal law, is

unconvincing.  The relationship between federal law and state claims in *Royal Canin* is similar to

17

the one in this case.  The *Royal Canin* complaint "alleged the [federal] violations not as independent federal claims, but instead in support of [the plaintiff's] state claims."  *Royal Canin*, 604 U.S. at 29 n.1.  The Eighth Circuit, citing *Gunn*, held that the state-law claims arose under federal law because those "provisions [were] thoroughly embedded in, and integral to the success of" the state law claims.  *Id.* (citing *Wullschleger v. Royal Canin U. S. A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020)).  The Supreme Court, however, took "a slight liberty throughout [the] opinion, referring to the original complaint's [federal] allegations simply as federal claims."  *Id.*  In other words, although Justice Kagan calls them federal claims, they were allegations that raised a federal question.  Like Ms. Wullschleger, the plaintiff amended his complaint to remove citations to federal law, while retaining essentially the same causes of action.  Thus, the facts are similar to the *Royal Canin* facts, and *Royal Canin* controls.

Nonetheless, the defendants maintain that *Royal Canin* does not apply to cases where a plaintiff's amended complaint "removed certain words" but otherwise "kept the factual premise of his claims intact, and . . . sought the same relief post-amendment that he had sought pre-amendment."  (ECF No. 53 at 8.)  In support of this proposed rule, they cite *Behlen*, 311 F.3d at 1095, where the Eleventh Circuit held that "it was proper for the court to retain jurisdiction over [the plaintiff's] amended complaint, because, despite his removal of the allegations that would bring his claims within the scope of the [federal law], the amended complaint still presents a federal question."  The Eleventh Circuit explained that the amended complaint continued to allege that the defendant violated federal securities laws, even though the plaintiff no longer cited those statutes; and merely removing citations to federal law did not erase the federal question.  *Id.* at 1095–96.

*Royal Canin* did not necessarily abrogate this holding, but the defendants' proposed rule does not follow from the quoted language.  According to the defendants, the amended complaint still asserts federal causes of action, even though it does not allege any violations of federal law.  (ECF No. 53 at 8–9.)  Accepting the defendants' theory would require the Court to read a federal cause of action into the amended complaint, which it will not do.  *See Royal Canin*, 604 U.S. at 35 (the plaintiff is the "master of the complaint" and "gets to determine which substantive claims to bring against which defendants").  After all, the Court would not allow the plaintiff to recover under a federal cause of action when his amended complaint does not state one; nor will the Court read a federal claim into the complaint to exercise jurisdiction.[11]

The better reading of *Behlen* accords with the defendants' next argument — that even if the plaintiff asserts only state-law claims, those claims still arise under federal law.  (*Id.* at 10 (quoting *Grable*, 545 U.S. at 314).)  In addition to cases that arise directly under federal law, "the Supreme Court has identified a 'special and small' category of actual state claims that present significant, disputed issues of federal law," and therefore arise under federal law within the meaning of § 1331.  *Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 912 (2d Cir. 2024) (citation omitted).  "For a state law claim to fall within this 'slim category,' the embedded federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

---

[11] In claiming that the plaintiff amended his complaint "to *retain* the claims that gave rise to federal jurisdiction in the first instance while also trying to wordsmith them to make them sound like something else" (ECF No. 53 at 8 (emphasis in original)), the defendants may mean to argue that the plaintiff impermissibly "disguise[s] . . . inherently federal cause[s] of action, to block removal." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3722.1.  In other words, the defendants might be saying that the plaintiff's state constitutional claims are inherently federal causes of action — under 42 U.S.C. § 1983, for instance — because, as discussed below, no cause of action exists under state law.  To credit this position, however, the Court would have to rewrite the plaintiff's complaint to find a viable federal cause of action that does not appear on the face of the complaint.  That is not the Court's job.  *See, e.g., Adams v. Gen. Motors Acceptance Corp.*, 307 F. Supp. 2d 812, 817 (N.D. Miss. 2004) (remanding and rejecting defendant's argument that because state law provided no cause of action, the plaintiffs' claims must be construed as federal claims).

capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 568 U.S. at 258); *see also Grable*, 545 U.S. at 314.

       *i.*     *Necessarily Raised*

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 140 (2d Cir. 2023) (quoting *Jacobson*, 824 F.3d at 315). "For a federal issue to be necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Id.* (emphases in original) (internal quotations and citations omitted). "In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros*, 12 F.4th at 141. The Second Circuit has instructed district courts to "[f]ocus[] on 'what necessarily appears in the plaintiff's statement of his own claim,'" and "exercise federal jurisdiction only if 'a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action.'" *Id.* (alterations adopted) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

The plaintiff alleges in the amended complaint that the defendants violated his right to be free from unreasonable searches and seizures under Article I, § 12 of the Florida Constitution and his right of privacy under Article I, § 23 of the Florida Constitution, by executing this Court's orders. (ECF No. 26 ¶¶ 17–26, 30–35.) The plaintiff attached to his amended complaint two affirmations of service that say that the defendants executed the search pursuant to this Court's seizure order. (ECF No. 26-1, Ex. C, at 8–9; ECF No. 26-1, Ex. D, at 10–12.) The plaintiff's state constitutional claims are, therefore, premised on the defendants' execution of an

order issued from this Court pursuant to a federal statute, 15 U.S.C. § 1116(d).[12]  In other words, to establish that the search violated the Florida constitution, the plaintiff must prove either that the Court's asset freeze and seizure orders were improper or that they were illegally executed. Both are questions of federal law and are necessarily raised by the plaintiff's claims under the state constitution.

But these federal questions would not necessarily arise if the plaintiff does not have a cause of action, because then they are not "an element . . . of the plaintiff's cause of action." *Tantaros*, 12 F.4th at 141.  That is the case here, because as the defendants point out, "no cause of action exists for money damages for a violation of a state constitutional right" in Florida. *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th Dist. Ct. App. 2004) (citing *Garcia v. Reyes*, 697 So.2d 549 (Fla. 4th Dist. Ct. App. 1997)).  *See also Cowans v. Maximus Educ. LLC*, No. 4D2025-0235, 2025 WL 2055134, at *1 (Fla. 4th Dist. Ct. App. July 23, 2025) ("[I]t does not appear that article I, section 23 gives rise to a cause of action for money damages."); *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st Dist. Ct. App. 1994) (holding that it is "clear that article I, section 23 does not create a cause of action for 'governmental intrusion' because legislative enactment is needed to delineate whether immunity is waived to permit the award of money damages")*, approved,* 670 So. 2d 56 (Fla. 1996); *Funderburk v. O'Leary*, No. 21-CV-14290, 2023 WL 3491221, at *5 (S.D. Fla. May 17, 2023) ("Plaintiff will not be permitted to seek damages for violations of the Florida Constitution." (collecting cases)); *Lindbloom v. Manatee Mem'l Hosp., L.L.C.*, No. 23-CV-2856, 2025 WL 1563550, at *7 (M.D. Fla. Apr. 7, 2025) ("Florida state and federal courts have held that 'Florida constitutional claims do not support claims for damages absent a separate enabling statute.'" (internal citation omitted))*, report and*

---

[12] The defamation claims do not arise under federal law, and the defendants do not argue that they do.

*recommendation adopted*, 2025 WL 1450371 (M.D. Fla. May 21, 2025); *Ayala v. City of Pembroke Pines*, No. 25-CV-60294, 2025 WL 2202101, at *3 (S.D. Fla. June 27, 2025) ("[N]o cause of action exists for monetary relief for a violation of a Florida constitutional right."); *Capps v. Fla. Highway Patrol*, No. 17-CV-60365, 2017 WL 1436077, at *7 (S.D. Fla. Apr. 24, 2017) (collecting cases); *Smith v. Bell*, No. 06-CV-60750, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself." (collecting cases)).  Accordingly, because the plaintiff has no private right to raise the federal issues, those issues are not necessarily raised on the face of the plaintiff's complaint, and this case does not arise under federal law.

In an abundance of caution, however, and because the Court could construe the plaintiff's constitutional claims as a tort claim for invasion of privacy that necessarily raises these federal questions, the Court continues the *Gunn-Grable* analysis.  *See Percival v. Chronister*, No. 23-CV-1243, 2025 WL 1940316, at *17 (M.D. Fla. July 15, 2025) (construing *pro se* claim "incorrectly ground[ed]" in the Florida Constitution as "one for an invasion of privacy"); *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980) (holding that "Florida has recognized the tort of invasion of privacy," at least in cases of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home").

ii.    *Actually Disputed*

Assuming federal questions necessarily arise in the state law claims, those questions — the legality of the Court's orders and the defendants' execution of those orders, in this case — are a "central point of dispute" in the action, "satisfying the second requirement for the exercise of federal jurisdiction in this case." *Link Motion Inc.*, 103 F.4th at 913 (quoting *Gunn*, 568 U.S. at 259).

### iii.    Substantial

"Nevertheless, as the Supreme Court has cautioned, 'the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Id.* (alteration in original) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  The dispute must also be substantial.  To satisfy this requirement "'it is not enough that the federal issue be significant to the particular parties in the immediate suit'; rather, 'the substantiality inquiry looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (cleaned up) (quoting *Gunn*, 568 U.S. at 260).  "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (alteration in original) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).  For example, the Supreme Court and Second Circuit have exercised federal question jurisdiction where state law claims raise "disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Id.*

*Grable* is instructive on this point.  In that case, the Internal Revenue Service seized Grable & Sons Metal Products' property and sold it to satisfy its federal tax debt.  *Grable*, 545 U.S., at 310–311.  The company filed a state law quiet title action against the third party that bought the property, alleging that the IRS had not complied with statutory notice requirements, so the seizure and sale were invalid.  *Id.* at 311.  The Supreme Court emphasized that the federal government has a "strong interest" in the collection of delinquent taxes, and "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315

In this case, the plaintiff challenges the Court's authority to issue asset freeze and seizure orders under the Lanham Act.  Although Congress granted concurrent jurisdiction to state and federal courts over claims under the Lanham Act, 28 U.S.C. § 1338(a), a court must construe the

statute "in the light of a strong federal policy in favor of vigorously competitive markets." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). To that end "Congress recognized that a trademark aids competition in the marketplace because it helps a consumer distinguish among competing products." *Id.* (citation omitted). These important federal policies are at issue in this case. This is a close call, but this case could raise sufficiently substantial issues that implicate the whole federal system to support jurisdiction.

iv.    *Disruption to the Federal-State Balance*

But even if the plaintiff's "state action necessarily raises a disputed and substantial issue of federal law," the Court would still not have federal question jurisdiction, because "federal jurisdiction lies only if adjudication in a federal forum would be consistent with the 'congressionally approved balance of state and federal judicial responsibilities,' defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros*, 12 F.4th at 146 (quoting *Jacobson*, 824 F.3d at 316). "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court." *Jacobson*, 824 F.3d at 316.

In this case, however, Florida has a special interest in the claims the plaintiff makes: violations of the state constitution. "It is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions." *Florida v. Powell*, 559 U.S. 50, 56 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940). Even if substantial federal issues are at stake in this case, so are core state interests. The plaintiff's state-law claims, therefore, are outside of the Court's federal question jurisdiction under *Grable* and *Gunn*.

*           *           *

24

Accordingly, this case does not fall within the narrow category of cases in which purely state-law claims support jurisdiction under § 1331.

### d.        Diversity Jurisdiction

In the alternative, the defendants argue the Court has diversity jurisdiction under § 1332. "Congress has always given federal courts power to decide 'diversity' cases." *Royal Canin*, 604 U.S. at 26 (citing 28 U.S.C. § 1332(a)). Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different [s]tates." 28 U.S.C. § 1332(a). The parties do not dispute that they are completely diverse. Therefore, the Court has diversity jurisdiction if the amount in controversy exceeds $75,000.

Courts determining whether they have diversity jurisdiction adhere to the "time-of-filing" rule, which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint] — whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004). The *Royal Canin* Court reaffirmed this rule as applied to questions concerning "the actual 'state of things' relevant to jurisdiction — meaning, the facts on the ground, rather than (as addressed [in *Royal Canin*]) the claims and parties that the plaintiff includes in a complaint." *Royal Canin*, 604 U.S. at 36 n.5. The Court observed that courts typically evaluate a party's citizenship and the amount in controversy as of the time the plaintiff files the original complaint. *Id.* at 36 n.5, 38 n.8.

As to the amount in controversy, the Court offered two reasons that "an amendment reducing the alleged amount-in-controversy to below the statutory threshold . . . will usually not

destroy diversity jurisdiction." *Id.* at 38 n.8; *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.").  The first is that "the value of a suit" concerns "facts on the ground," as opposed to the plaintiff's decision as master of the complaint in choosing the parties and claims, so the Court "viewed it as analogous to the time-of-filing rule applying to citizenship, which also assesses a factual issue relevant to jurisdiction only at the suit's outset." *Royal Canin*, 604 U.S. at 38 n.8.  Second, assessing a suit's value poses unique difficulties, because it is likely "that the calculation will change over the course of litigation," which could inspire "constant litigation" and "alter a court's jurisdiction." *Id.* Therefore, the Court looks to the original complaint to determine the amount in controversy.

The removing defendants must show a "reasonable probability that the jurisdictional amount has been reached." *Cappuccilli v. Cokinos*, No. 24-CV-3045, 2024 WL 3013604, at *1 (E.D.N.Y. June 14, 2024) (citation omitted).  "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 273–74 (2d Cir. 1994).  "In determining whether the removing defendant has met this burden, courts 'look first to the plaintiffs' complaint and then to [the defendants'] petition for removal.'" *Gregory Wayne Designs, LLC v. Lowry*, No. 24-CV-2109, 2024 WL 3518584, at *3 (S.D.N.Y. July 24, 2024) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).  If neither in conclusive, "courts may look outside those pleadings to other evidence in the record." *Id.* (quoting *United Food & Com. Workers Union*, 30 F.3d at 305).

The plaintiff does not allege a specific damages amount in the state court complaint. Instead, he claims that the damages exceed $50,000.00, which is the jurisdictional threshold for circuit courts in Florida.  (ECF No. 1-1 ¶ 12; ECF No. 18 at 10 (citing Fla. Stat. Ann § 34.01).)  This allegation does not support federal jurisdiction because it "merely indicates an amount in controversy in excess" of a jurisdiction limit that is below $75,000.  *De Garcia v. Tropicana Ent. Inc.*, No. 22-CV-12, 2022 WL 375996, at *2 (E.D.N.Y. Feb. 8, 2022) (quoting *Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *1 (E.D.N.Y. Jan. 11, 2016)) (collecting cases); *see also O'Neill v. Target Corp.*, No. 21-CV-3262, 2021 WL 2634880, at *2 (E.D.N.Y. June 25, 2021); *Williams v. CVS*, No. 25-CV-655, 2025 WL 486656, at *2 (E.D.N.Y. Feb. 13, 2025).

Nor do the plaintiff's "boilerplate" allegations of his injuries "suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction." *Mekhi v. Area Storage & Transfer, Inc.*, No. 18-CV-4654, 2018 WL 4043152, at *2 (E.D.N.Y. Aug. 24, 2018) (citation omitted) (collecting cases).  The plaintiff pleads five causes of action.[13] For his state constitutional claims, he alleges he "suffered damages, including emotional distress, invasion of privacy, and other harm" and "demands [j]udgment for damages [and] punitive damages."  (ECF No. 1-1 ¶¶ 32, 35, 38.)  For his defamation claims, he alleges he "suffered damages, including damage to reputation, emotional distress, and other harm" and "demands [j]udgment for damages [and] punitive damages."  (*Id.* ¶¶ 42, *id.* at 10.)  These "conclusory assertions . . . lack of any detail regarding Plaintiff's specific damages," and "there is simply insufficient information to 'intelligently ascertain removability.'" *Mekhi*, 2018 WL 4043152, at

---

[13] He probably pleads just two cognizable causes of action.  (*See* ECF No. 18 at 13 (arguing that only the libel and slander claims are even "superficially *cognizable* against private actors such as Defendants" (emphasis in original).)

*2 (quoting *DeMarco v. MGM Transp., Inc.,* No. 06-CV-307, 2006 WL 463504, at *1 (E.D.N.Y. Feb. 24, 2006)); *see also Herlihy v. Hyatt Corp.*, 2022 WL 826151, at *2 (S.D.N.Y. Mar. 18, 2022) ("[G]eneralized and conclusory allegations do not permit the Court to draw the reasonable inference that the amount in controversy requirement is met." (collecting cases)).

The defendants maintain, however, that each claim, if proven, is "likely to result in damages far in excess of $75,000," because "jury awards in defamation cases regularly exceed" that amount. (ECF No. 53 at 12; ECF No. 18 at 9–16.) But just because jury awards may exceed the amount in controversy does not mean that they must — or that they do in this case. Moreover, post-trial jury awards offer little guidance on the amount in controversy of claims before any motion practice or discovery. For these reasons, courts in this circuit routinely disregard comparisons to jury verdicts in determining the amount in controversy for jurisdictional purposes. *See, e.g.*, *Jean-Louis v. Amazon.com Servs., LLC*, No. 22-CV-5020, 2022 WL 3867668, at *3 (E.D.N.Y. Aug. 29, 2022) ("[C]onsidering the procedural posture of this case, [the defendant's] reliance on cases — decided post-trial — discussing at length evidence of a relentless stream of discrimination and taunting that spanned many years is misplaced."); *Salerno v. N. Manor Multicare Facility*, No. 21-CV-7490, 2021 WL 4148900, at *2 (S.D.N.Y. Sept. 13, 2021) (declining to rely on "cases *reviewing* jury verdicts for emotional damages" in determining amount in controversy because of the difference in "procedural posture" (emphasis in the original)).

The defendants also point to the plaintiff's request for punitive damages, which they state may be "up to three times actual damages or $500,000, whichever is higher." (ECF No. 53 at 12.) "[I]n computing the jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (alteration adopted) (citation omitted).  The complaint does not allege any facts that would support "reasonable probability" that the plaintiff would be entitled to punitive damages; the "conclusory assertion that any amount of punitive damages is a *fait accompli* is untethered to the record and amounts to the kind of speculation and surmise that courts in this Circuit routinely reject." *Jean-Louis*, 2022 WL 3867668, at *4.

The defendants' notice of removal does not satisfy their burden either.  They plead that "the amount in controversy in this action — as pled — plausibly exceeds $75,000."  (ECF No. 1 ¶ 16.)  This conclusory assertion is similarly not conclusive or controlling.  *Gregory Wayne Designs, LLC*, 2024 WL 3518584, at *4.  The defendants cannot "rely[] on inferences drawn from the Complaint," because it does not allege any facts about the nature or extent of the plaintiff's harm.  *Herrera v. Terner*, No. 16-CV-4610, 2016 WL 4536871, at *2 (E.D.N.Y. Aug. 30, 2016); *see also Shoham v. United Airlines, Inc.*, No. 22-CV-5677, 2022 WL 13798296, at *2 (E.D.N.Y. Oct. 21, 2022) (remanding personal injury claims because the "boilerplate pleadings" could not establish an amount in controversy supported federal jurisdiction).

Without any factual allegations about the plaintiff's injuries to support jurisdiction, the defendants must look outside the pleadings.  They cite the state court civil cover sheet that the plaintiff filed with his complaint.  (ECF No. 1-1 at 2.)  On this administrative form, the plaintiff "estimated [the] amount of the claim, rounded to the nearest dollar" at "over $100,000.00."  (*Id.*)  However, the Court declines to rely on this document as affirmative evidence of the actual amount in controversy.  The civil cover sheet states on its face that it "neither replace[s] nor supplement[s] the filing . . . of pleadings" and is required by "the Clerk of Court for the purpose of reporting uniform data pursuant" to state law.  (*Id.*)  The amount of claim question narrows its

use even further:  It is "for data collection and clerical processing purposes only.  The amount of the claim shall not be used for any other purpose."  (*Id.*)  Indeed, courts have held that a plaintiff's answers on the civil cover sheet cannot establish diversity jurisdiction.  *Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Galloway v. Ahamed*, No. 22-CV-979, 2022 WL 3107330, at *5 (D. Conn. Aug. 4, 2022) (checking box on civil cover sheet is not sufficient to prove the amount in controversy exceeds the jurisdictional threshold); *Powell v. Maldonado*, No. 23-CV-826, 2024 WL 496478, at *4 (E.D.N.Y. Feb. 7, 2024) (checking boxes on civil cover sheet does not establish parties are diverse).  This is especially true in the context of removal, because "federal courts construe the removal statute narrowly, resolving any doubts against removability," *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).

\*      \*      \*

Accordingly, the Court lacks federal jurisdiction over this action, and it must remand the case.  *See* 28 U.S.C. 1447(c).

## III.    Remand to Florida State Court

"[W]hen an action is transferred, it remains what it was."  *Magnetic Eng'g & Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.).  "[A] transferee court is deemed to inherit all the authority of a transferor court."  *Allied Signal Recovery Tr. v. Allied Signal, Inc.*, 298 F.3d 263, 271 (3d Cir. 2002) (holding that "a court has authority to send a case back to the state court where it originated" and "does not have authority to 'remand' a case to a stranger court").  This includes the authority to remand the case to the state court where the case originated.  *See, e.g.*, *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir.

2002) (declining to review order remanding case to the Florida Circuit Court for lack of federal subject matter jurisdiction); *Parker v. J. Crew Grp., Inc.*, No. 17-CV-1214, 2018 WL 385033, at *2 (D.N.J. Jan. 11, 2018) (remanding transferred case to Illinois state court); *Retterath v. Homeland Energy Sols., LLC*, No. 14-CV-158, 2014 WL 7776705, at *10 (S.D. Iowa Dec. 24, 2014) (remanding transferred case to Florida state court).

Indeed, the Court has no other option. The removal statute contemplates that courts may remand a case only "to the State court from which it was removed." 28 U.S.C. 1447(c). Courts have repeatedly followed this reasoning and "held that a district court is only permitted to remand a case to the state court from which the case was removed." *Salis v. Manzanet-Daniels*, No. 24-CV-1130, 2025 WL 1305868, at *4 (N.D.N.Y. May 6, 2025) (collecting cases). The Court must remand the case if it does not have subject matter jurisdiction, and there is only one court to which remand is permissible. Accordingly, this case is remanded to the First Judicial Circuit Court of Florida, the court from which it was removed.

## CONCLUSION

For the foregoing reasons, the case is remanded to the First Judicial Circuit Court of Florida. The Clerk of Court is respectfully directed to transfer the record to that court.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       September 30, 2025

31